OHIO CIVIL RIGHTS COMMISSION, APPELLANT, *v.* COUNTRYWIDE HOME LOANS, INC. ET AL., APPELLEES.

[Cite as *Ohio Civ. Rights Comm. v. Countrywide Home Loans, Inc.,* 99 Ohio St.3d 522, 2003-Ohio-4358.]

(No. 2002–0150—Submitted March 11, 2003—Decided September 3, 2003.)

PFEIFER, J.

{¶ 1} On June 23, 1999, Eric and Vonda Williams filed a charge with the Chicago, Illinois office of the Department of Housing and Urban Development ("HUD"). The charge alleged that appellees, Countrywide Home Loans, Inc., and two alleged agents (collectively, "Countrywide"), engaged in sex discrimination and family-status discrimination by not considering Mrs. Williams's salary during the loan-application process because she was on maternity leave. On August 3, 1999, HUD notified Countrywide of the charge. HUD referred the charge to the Ohio Civil Rights Commission ("OCRC"). On August 10, 1999, OCRC received the charge and began its investigation. OCRC filed an administrative complaint against Countrywide on July 13, 2000.

{¶ 2} Countrywide moved for summary judgment, claiming that the one-year statute of limitations had run before OCRC filed the complaint. OCRC filed the complaint one year and 20 days after the Williamses' charge was filed with HUD. The trial court granted the motion for summary judgment, and the court of appeals affirmed. The cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 3} The principal issue in this case is whether R.C. 4112.05(B)(7) is a statute of limitations for the filing of complaints by OCRC or whether it is a directory provision to encourage the orderly processing of discrimination claims. We hold

that R.C. 4112.05(B)(7) is mandatory. Accordingly, we affirm the judgment of the court of appeals.

{¶ 4} R.C. 4112.05(B)(7) states that any complaint issued by OCRC based on the filing of a charge of unlawful discriminatory practice "shall be so issued within one year after the complainant filed the charge." In *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus, this court stated that "the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage." Accord *State v. Golphin* (1998), 81 Ohio St.3d 543, 545–546, 692 N.E.2d 608. We consider the use of the word "shall" in R.C. 4112.05(B)(7) to indicate unambiguously that the provision is mandatory. See *State ex rel. Gen. Motors Corp. v. Ohio Civ. Rights Comm.* (1977), 50 Ohio St.2d 111, 114, 4 O.O.3d 241, 362 N.E.2d 1221 (holding similar language in predecessor statute mandatory).

{¶ 5} Interpreting R.C. 4112.05(B)(7) to be anything other than a mandatory statute of limitations would disserve defendants and claimants. Defendants would be required to choose between being exposed to liability for actions long past and filing for writs of mandamus to force OCRC to act. Such a choice would subject defendants to undue burdens and be inconsistent with the legal principles requiring parties to act on claims or lose them.

{¶ 6} We hold that the one-year time limit contained in R.C. 4112.05(B)(7) is mandatory, not directory.

{¶ 7} Concluding that R.C. 4112.05(B)(7) is mandatory does not fully resolve this case. OCRC argues that, in any event, it did file within the mandatory one-year period. Relying on Ohio Adm.Code 4112–3–01(D), OCRC contends that the filing date of the original charge is August 10, 1999, because that is the date on which it received the charge from HUD. If August 10, 1999, were the filing date, then the administrative complaint, which was filed on July 13, 2000, would be timely.

{¶ 8} Ohio Adm.Code 4112–3–01(D) states that "[a] charge filed with * * * the department of housing and urban development (HUD) which indicates it is also filed with the commission is deemed filed with the Ohio civil rights commission on the date it is received at one of the commission offices." According to the rule, the date of receipt is deemed the filing date only when the charge indicates a dual filing. OCRC's argument fails because the charge, when submitted by the complainants, did not indicate that it was filed with both HUD and OCRC. Further, there is no indication that the Williamses ever filed the charge with OCRC.

{¶ 9} We conclude that Ohio Adm.Code 4112–3–01(D) does not change the filing date in this case. Accordingly, the statute of limitations began to run on

June 23, 1999, and expired June 23, 2000. OCRC's complaint, filed July 13, 2000, was untimely, and the trial court properly dismissed the complaint.

{¶ 10} Finally, OCRC argues that the Williamses have a property interest in the case before us and that a determination that OCRC filed the complaint outside the statute of limitations would deprive them of due process. This argument would be more compelling if the Williamses were not pursuing a class action against Countrywide for the same alleged discriminatory practice. See *Williams v. Countrywide Home Loans, Inc.*, 6th Dist. No. L–01–1473, 2002-Ohio-5499, 2002 WL 31270283. We conclude that whatever property interest the Williamses have is being protected in their separate suit against Countrywide.

{¶ 11} For the foregoing reasons, we affirm the judgment of the court of appeals, which affirmed the trial court's grant of summary judgment.

Judgment affirmed.

MOYER, C.J., F.E. SWEENEY, SHAW and O'CONNOR, JJ., concur.

CARR and LUNDBERG STRATTON, JJ., dissent.

DONNA J. CARR, J., of the Ninth Appellate District, sitting for RESNICK, J.

STEPHEN R. SHAW, J., of the Third Appellate District, sitting for COOK, J.

---

**CARR, J., dissenting.**

{¶ 12} I respectfully dissent, as I would hold that the term "shall" as it is used in R.C. 4112.05(B)(7) is not mandatory but merely directory. Consequently, the failure of OCRC to issue a complaint within one year after the Williamses filed their charge with the Department of Housing and Urban Development did not deprive OCRC of authority to proceed with the action and was not a proper basis for summary judgment in this case.

{¶ 13} The majority focuses exclusively on the general rule of statutory construction that "the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage." *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus.

{¶ 14} The majority fails to acknowledge, however, that this court has long recognized an exception to the general rule in cases such as this where the statutory language relates to "the manner or time in which power or jurisdiction vested in a public officer is to be exercised." *Schick v. Cincinnati* (1927), 116 Ohio St. 16, 155 N.E. 555, paragraph one of the syllabus. "A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory merely, unless the nature of the act to be

performed or the phraseology of the statute or of other statutes relating to the same subject matter is such that the designation of time must be considered a limitation upon the power of the officer." *State ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, 255, 142 N.E. 611.

{¶ 15} In *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, this court held, at paragraphs one, two, and three of the syllabus:

{¶ 16} "1. A statute is mandatory where noncompliance with its provisions will render illegal and void the steps or acts to which it relates or for which it provides, and is directory where noncompliance will not invalidate such steps or acts.

{¶ 17} "2. As a general rule, statutes which relate to the essence of the act to be performed or to matters of substance are mandatory, and those which do not relate to the essence and compliance with which is merely a matter of convenience rather than substance are directory.

{¶ 18} "3. As a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure; and, unless the object or purpose of a statutory provision requiring some act to be performed within a specified period of time is discernible from the language employed, the statute is directory and not mandatory."

{¶ 19} This court has continued to apply the rule set forth in *Farrar*, not *Dorrian*, in situations such as the one currently at issue. See, e.g., *State v. Bellman* (1999), 86 Ohio St.3d 208, 210, 714 N.E.2d 381; *In re Davis* (1999), 84 Ohio St.3d 520, 522, 705 N.E.2d 1219; *State ex rel. Webb v. Bryan City School Dist. Bd. of Edn.* (1984), 10 Ohio St.3d 27, 31, 10 OBR 178, 460 N.E.2d 1121. As this court explained in *Webb*, *Dorrian* applies only to the question "whether there was a mandatory duty to act, and not when the act was to be done." Id. at 31, 10 OBR 178, 460 N.E.2d 1121. That is not the type of issue before us. There is no dispute that OCRC did perform the required substantive act by filing a complaint in this case. The only issue is whether the language of R.C. 4112.05(B)(7), that a complaint by OCRC "shall be so issued within one year after the complainant filed the charge," is mandatory or directory. Consequently, this court should apply the rule of statutory construction set forth in *Farrar* and *Barnell*, not *Dorrian*. See *In re Davis*, 84 Ohio St.3d at 522, 705 N.E.2d 1219; *Webb*, 10 Ohio St.3d at 31, 10 OBR 178, 460 N.E.2d 1121.

{¶ 20} Applying *Farrar* and *Barnell* to the statutory language at issue, that a complaint "shall" be issued within one year of the claimant's charge, the time requirement is mandatory only if R.C. 4112.05, or related statutory language, evinces a purpose to limit the authority of OCRC to issue a complaint beyond the one-year period. See *Bellman*, 86 Ohio St.3d at 210, 714 N.E.2d 381. There is

no such language to be found anywhere in R.C. Chapter 4112. In fact, this legislation is completely silent on the consequences of OCRC's failure to issue a complaint within the one-year period. Thus, there is no clear legislative intent that the one-year period set forth in R.C. 4112.05(B)(7) was intended to limit the authority of OCRC to act beyond that time. The legislature failed to specify any consequences for a late filing, which certainly suggests that it did not intend a late filing to lead to dismissal of the complaint. See *Bellman,* 86 Ohio St.3d at 210, 714 N.E.2d 381 (contrasting statutory speedy-trial requirements that explicitly state that dismissal is a consequence of noncompliance with the time requirement).

{¶ 21} In addition to the language used in a statute, the character of a given statute may also be determined by consideration of "the nature, context and object of the statute" and "the consequences of the various constructions." *Farrar,* 146 Ohio St. at 473, 32 O.O. 542, 66 N.E.2d 531; *Barnell,* 109 Ohio St. at 259, 142 N.E. 611. See, also, *In re Davis,* 84 Ohio St.3d at 522–523, 705 N.E.2d 1219.

{¶ 22} R.C. 4112.08 provides that R.C. Chapter 4112 "shall be construed liberally for the accomplishment of its purposes." R.C. 4112.05(A) provides that the OCRC "shall prevent any person from engaging in unlawful discriminatory practices, provided that, before instituting the formal hearing authorized by division (B) of this section, it shall attempt, by informal methods of conference, conciliation, and persuasion, to induce compliance with this chapter." The purpose of R.C. Chapter 4112 is to protect victims of discrimination. See *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph one of the syllabus. OCRC was entrusted with the duty of investigating and remedying the Williamses' claim that they had been the victims of unlawful discrimination, on behalf of the Williamses and the public at large.

{¶ 23} The purpose of R.C. Chapter 4112 would clearly be thwarted if the failure of OCRC to pursue remedies on behalf of alleged victims in a timely manner would always lead to dismissal of the complaint. In *Brock v. Pierce Cty.* (1986), 476 U.S. 253, 260, 106 S.Ct. 1834, 90 L.Ed.2d 248, the United States Supreme Court noted, when construing similar language in a federal statute:

{¶ 24} "We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act." (Footnote omitted.)

{¶ 25} The District of Columbia Court of Appeals construed the word "shall" in a similar statute to be directory. *JBG Properties, Inc. v. Dist. of Columbia Office of Human Rights* (D.C.App.1976), 364 A.2d 1183, 1186. The court focused on the purpose of Human Rights Law in the District of Columbia, to aid both the individual claimant and the public at large in ending employment discrimination, and quoted a passage from 2A Sutherland, Statutory Construction (3d Ed.Rev. 1973) 443–444, Section 57.19:

{¶ 26} " '[F]or obvious reasons founded in fairness and justice, time provisions are often found to be directory merely, where a mandatory construction might do great injury to persons not at fault, as in a case where slight delay on the part of a public officer might prejudice private rights or the public interest. * * *

{¶ 27} "For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the officer. [Footnotes omitted.]' " Id. at 1185.

{¶ 28} No one disputes that the Williamses filed their charge with OCRC within the time limits set forth in R.C. 4112.05(B)(1), the limitations period set forth for claimants.

{¶ 29} The majority is concerned that defendants will be unduly burdened if the one-year time period of R.C. 4112.05(B)(7) is not construed as a statute of limitations. "[I]t is not insignificant that the section is not in any way the typical limitation imposed on the plaintiffs to ensure that they expeditiously pursue their claims and to protect defendants against stale claims." *West Virginia Human Rights Comm. v. Garretson* (1996), 196 W.Va. 118, 125, 468 S.E.2d 733 (construing a similar provision in a West Virginia state statute). The Williamses timely filed their charge with OCRC, and the Department of Housing and Urban Development notified the defendant, Countrywide Home Loans, within a few weeks. Any concerns that OCRC will be filing complaints years after the alleged discriminatory conduct occurred, thereby prejudicing defendants are unfounded. OCRC has an incentive to prosecute claims in a timely manner because it does not want its evidence to become stale any more than defendants do.

{¶ 30} In addition to thwarting the purpose of the statute, the consequence of the majority's construing this language as mandatory is that claimants will be deprived of due process whenever OCRC fails to timely issue complaints. In *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265, the United States Supreme Court held that a claimant who timely filed a

charge under the Illinois Fair Employment Practices Act had a property interest in the statutory procedures and that he could not be deprived of those procedures simply because the state agency had failed to meet a filing deadline. I can see no sound legal basis to distinguish the due process argument raised in *Logan* from the argument raised by the Williamses here. It is a well-settled principle of statutory construction that courts should liberally construe a statute to save it from constitutional infirmities. *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 330 N.E.2d 896. Consequently, the word "shall" as it is used in R.C. 4112.05(B)(7) must be construed as directory.

{¶ 31} Courts from several other jurisdictions have held that similar language is directory, not mandatory, and that the agency, which acts on behalf of the claimant, has the authority to proceed beyond the time constraints set forth in the statute. See, e.g., *Housing Opportunities Made Equal, Inc. v. Pataki* (1998), 180 Misc.2d 778, 693 N.Y.S.2d 795; *West Virginia Human Rights Comm.*, 196 W.Va. at 127, 468 S.E.2d 733; *Wildwood Industries v. Illinois Human Rights Comm.* (1991), 220 Ill.App.3d 12, 22, 162 Ill.Dec. 546, 580 N.E.2d 172; *Atlantic Richfield Co. v. Dist. of Columbia Comm. on Human Rights* (D.C.App.1986), 515 A.2d 1095, 1102–1103 (contrasting an untimely claim filed by a claimant, which is time-barred, with a claim pursued by the commission on behalf of an aggrieved party); *Brock*, 476 U.S. at 262, 106 S.Ct. 1834, 90 L.Ed.2d 248 ("the mere use of the word 'shall' * * * standing alone, is not enough to remove the Secretary's power to act after 120 days").

{¶ 32} For the foregoing reasons, I respectfully dissent. I would reverse the judgment of the court of appeals and remand the cause to the court of common pleas.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

---

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephanie Bostos Demers, Duffy Jamieson and Marilyn Tobocman, Assistant Attorneys General, for appellant.

Gressley, Kaplin & Parker and George James Conklin; Goodwin Proctor, L.L.P., John C. Englander, F. Dennis Saylor IV and Jennifer B. Brown, for appellees.

Cooper & Walinski, L.P.A., Stephen M. Dane and Janet E. Hales, urging reversal for amici curiae Eric and Vonda Williams, Toledo Fair Housing Center, Miami Valley Fair Housing Center, Fair Housing Advocates Association, the Housing Advocates, Fair Housing Contact Service, and Housing Opportunities Made Equal of Greater Cincinnati.