THE STATE EX REL. CONSUMERS' COUNSEL *v.* PUBLIC
UTILITIES COMMISSION OF OHIO ET AL.

[Cite as *State ex rel. Consumers' Counsel v. Pub. Util.
Comm.,* 102 Ohio St.3d 301, 2004-Ohio-2894.]

(No. 2004-0387—Submitted April 13, 2004—Decided June 23, 2004.)

**Per Curiam.**

{¶ 1} In a case before respondent Public Utilities Commission of Ohio, SBC Ohio sought to approximately double its rates for unbundled network elements ("UNEs") provided to competitive carriers. *In re Review of SBC Ohio's TEL-RIC*[1] *Costs for Unbundled Network Elements,* case No. 02–1280–TP–UNC. On December 17, 2003, the commission set hearing procedures for the SBC Ohio case and denied SBC Ohio's request for an increase in interim UNE rates. Id. In *Review of SBC Ohio's TELRIC Costs,* at 6–7, the commission stated, "Although we are commencing a reexamination of certain TELRIC components as requested by SBC Ohio, we find no reason to adopt interim rates pending resolution of this matter nor to true-up any rates modified through this proceeding, if any, to the date this case was initiated."

{¶ 2} On January 16, 2004, SBC Ohio applied for a rehearing of the commission's decision denying interim rate increases. On that same date, a group of competitive local exchange carriers applied for a rehearing of the commission's decision setting a procedural schedule for the case.

{¶ 3} On February 11, 2004, the commission granted the applications "for the limited purpose of allowing the Commission additional time to consider the issues raised on rehearing." On February 26, 2004, the commission issued an agenda

---

1. TELRIC is the acronym for Total Element Long Run Incremental Cost.

for its March 4, 2004 public meeting. The agenda included the applications for rehearing in case No. 02–1280–TP–UNC.

{¶ 4} On March 1, 2004, relator, Ohio Consumers' Counsel ("OCC"), filed this action for a writ of prohibition to prevent respondents, the commission, its chairman, and the commissioners, from granting the applications for rehearing. OCC further requested a finding that the applications had been denied as a matter of law on February 16, 2004.

{¶ 5} On March 4, the commission rescheduled consideration of the rehearing application for March 11. On March 5, SBC Ohio moved for an interim rate increase.

{¶ 6} On March 11, 2004, the commission granted SBC Ohio's March 5 motion for an interim rate increase and denied the applications for rehearing. The commission denied SBC Ohio's application for rehearing as moot "[i]n light of [the commission's] order issued * * * regarding a March 5, 2004 motion for interim rates filed by SBC Ohio in this proceeding." The commission denied the competitive carriers' application because the carriers raised arguments that the commission had previously rejected.

{¶ 7} On March 19, 2004, respondents moved to dismiss OCC's prohibition action. On March 29, OCC filed a memorandum in opposition.

{¶ 8} This cause is now before the court for our S.Ct.Prac.R. X(5) determination.

{¶ 9} Under S.Ct.Prac.R. X(5), we must determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. *State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas* (2000), 88 Ohio St.3d 447, 449, 727 N.E.2d 900. Dismissal is required if, after presuming the truth of all material factual allegations and making all reasonable inferences in OCC's favor, it appears beyond doubt that OCC is not entitled to the requested extraordinary relief in prohibition. *State ex rel. Satow v. Gausse–Milliken,* 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, ¶ 11.

## Mootness

{¶ 10} Respondents contend that the commission's March 11, 2004 entry rendered OCC's prohibition claim moot.

{¶ 11} Respondents initially assert that OCC's request for a writ of prohibition is moot because the "action OCC sought to prevent has already occurred." This argument lacks merit. Prohibition is not limited to prevention of *future* unauthorized judicial or quasi-judicial actions. *Hughes v. Calabrese,* 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 15. Therefore, a prohibition action is not necessarily rendered moot when the act sought to be prevented occurs before a

court can rule on the prohibition claim. *State ex rel. Rogers v. McGee Brown* (1997), 80 Ohio St.3d 408, 410, 686 N.E.2d 1126.

{¶ 12} Nevertheless, as respondents note, the commission has now *denied* the applications for rehearing. Because OCC sought the writ to prevent the commission from *granting* the applications, its request appears moot. The commission did not grant the applications for rehearing. Cf. *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 26 ("to the extent that [relators] sought to prevent a policy that had already been discontinued by [respondents], their prohibition claim was moot").

{¶ 13} Furthermore, unlike the relators in *Denton*, OCC did not expressly challenge the commission's *general practice* of granting rehearing applications for the limited purpose of extending its time to review the application. And this practice would not necessarily evade review in the future. Cf. *State ex rel. Dispatch Printing Co. v. Louden* (2001), 91 Ohio St.3d 61, 64, 741 N.E.2d 517 ("an exception to the mootness doctrine arises when the claims raised are capable of repetition, yet evading review"). Instead, OCC now challenges a separate March 11 action by the commission to grant a March 5, 2004 motion by SBC Ohio for an interim rate increase. This order is not the subject of OCC's prohibition claim.

{¶ 14} Therefore, OCC's prohibition claim is moot.

## Prohibition

{¶ 15} Even if OCC's claim is not moot, dismissal is still warranted.

{¶ 16} OCC claims that it is entitled to the writ because the commission and its members lacked jurisdiction to consider the merits of the applications for rehearing when more than 30 days had passed without a merits decision by the commission. OCC cites R.C. 4903.10, which provides that an application for rehearing is considered denied if the commission does not grant or deny it within 30 days of its filing: "If the commission does not grant or deny such application for rehearing within thirty days from the date of filing thereof, it is denied by operation of law." On February 11, 2004, the commission granted the January 16 applications for the limited purpose of giving the commission more time to consider the issues. On March 11—more than 30 days after the applications were filed—the commission denied the applications.

{¶ 17} In order to be entitled to the requested extraordinary relief in prohibition, OCC had to establish, among other things, that the commission's exercise of quasi-judicial power in granting the applications for rehearing in limited part was "unauthorized by law" and that "the denial of the writ will result in injury for which no other adequate remedy exists in the ordinary course of law." *State ex rel. Hunter v. Summit Cty. Human Resource Comm.* (1998), 81 Ohio St.3d 450, 451, 692 N.E.2d 185.

{¶ 18} For the following reasons, OCC cannot establish these required elements.

{¶ 19} R.C. 4903.10 did not expressly preclude the commission from considering the merits of the applications for rehearing. The commission acted within 30 days of the filing of the applications when it granted the applications on February 11 for the limited purpose of allowing additional time to consider them. Nothing in R.C. 4903.10 or precedent specifically prohibited the commission from so proceeding. OCC's reliance on *State ex rel. Gen. Motors Corp. v. Ohio Civ. Rights Comm.* (1977), 50 Ohio St.2d 111, 4 O.O.3d 241, 362 N.E.2d 1221, to assert otherwise is misplaced. That case involved statutory language that specifically required that a complaint be issued within one year after alleged unlawful discriminatory practices had been committed. There is no comparable express requirement in R.C. 4903.10.

{¶ 20} Moreover, OCC still had an adequate remedy by application for rehearing. In fact, R.C. 4903.10 *explicitly bars* OCC from challenging the commission's orders in any action without first applying for rehearing:

{¶ 21} "No cause of action arising out of any order of the commission, other than in support of the order, shall accrue in any court to any person, firm, or corporation unless such person, firm, or corporation has made a proper application to the commission for a rehearing."

{¶ 22} OCC's complaint lacks any allegation that it applied for a rehearing of the commission's February 11 order granting the rehearing applications. It is axiomatic that a prohibition claim constitutes a "cause of action." Consequently, R.C. 4903.10 prevents OCC's prohibition action because it failed to satisfy the statutory prerequisite for filing it.

## Conclusion

{¶ 23} OCC's prohibition claim is moot and without merit. It seeks to challenge an action on a commission decision to defer consideration of SBC Ohio's January 16, 2004 application for rehearing that has since been denied. Therefore, we grant respondents' motion and dismiss the cause. Our judgment renders moot the motion to intervene as a respondent of Ohio Bell Telephone Company.

Cause dismissed.

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., dissents.

PFEIFER, J., dissenting.

{¶ 24} This seemingly inconsequential case raises important questions about the apparent intent of the Public Utilities Commission of Ohio to avoid meaningful review of its activities. It is difficult to decipher the commission's motivations on the sparse facts of this case, but it is less difficult to decipher the path it took to avoid review by this court.

{¶ 25} On December 17, 2003, the commission denied SBC's request for higher interim rates while considering SBC's application to approximately double its rates for unbundled network elements provided to competitive carriers. On January 16, 2004, SBC Ohio applied for a rehearing of the interim-rate decision. Also on January 16, 2004, competitors of SBC Ohio applied for a rehearing of the commission's decision setting a procedural schedule on the underlying increase case.

{¶ 26} On February 11, 2004, the commission essentially bought more time, granting the rehearing applications "for the limited purpose of allowing the Commission additional time to consider the issues raised on rehearing." On February 26, the commission issued an agenda for its March 4, 2004 public meeting that included a consideration of the applications for rehearing.

{¶ 27} On March 1, 2004, relator, Ohio Consumer's Counsel ("OCC"), filed this action in prohibition to prevent the granting of applications for rehearing, since more than 30 days had passed since the applications had been filed. At that point, this court probably made a mistake by not granting OCC's motion for expedited consideration of the OCC's action.

{¶ 28} The commission moved quickly after that. On March 4, it rescheduled consideration of the rehearing application for March 11. Then, the next day, SBC Ohio moved for another interim rate increase. On March 11, 2004, the commission granted SBC Ohio's new motion for an interim rate increase and denied the applications for rehearing. The commission denied SBC's application as moot and denied the competitive carriers' application because the carriers raised only arguments that the commission had previously rejected.

{¶ 29} In so ruling, the commission avoided meaningful consideration by this court of the OCC's prohibition action. The majority in this case holds that the OCC's prohibition action was mooted because the applications for rehearing were denied, thus precluding this court's determination of whether they were considered outside the prescribed time period.

{¶ 30} The commission's timing suggests that it wanted to allow an interim increase to SBC Ohio but did not want to risk that it would be overturned upon a ruling by this court that the rehearing motion was considered out of rule.

{¶ 31} The most interesting fact in this case is that, somehow, SBC Ohio caught on to this and moved for another interim rate increase while its rehearing motion was still pending. Once the new motion was safely filed, the commission ruled on the pending motions.

{¶ 32} Of course, we are dealing only with appearances here—there may well be a good reason for the commission's behavior in this case. But with questions being raised recently regarding the performance and loyalties of the previous Consumer's Counsel, appearances are important. The public is left to question whether anyone remains to look out for its interests.

---

Janine L. Migden–Ostrander, Consumers' Counsel, Joseph P. Serio, David C. Bergmann and Terry L. Etter, Assistant Consumers' Counsel, for relator.

Jim Petro, Attorney General, Duane Luckey, Senior Deputy Attorney General, and Matthew J. Satterwhite, Assistant Attorney General, for respondents.